Filed 9/9/16  Certified for publication 10/5/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHRISTIE HJELM, et al.<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>PROMETHEUS REAL ESTATE GROUP, INC.,<br><br>        Defendant and Appellant. | A142723<br><br>(San Mateo County<br>Super. Ct. No. CIV516959) |

Plaintiffs Christie and Justin Hjelm (when referred to collectively, the Hjelms) leased an apartment in a large complex from Prometheus Real Estate Group (Prometheus).  Their apartment became infested with bedbugs, and the complex had an ongoing raw sewage problem, the upshot of which was that the Hjelms and their children were forced to leave.  The Hjelms sued Prometheus, and a jury returned a verdict for them.  The trial court then awarded the Hjelms their attorney fees based on Civil Code section 1717.  We affirm.

## BACKGROUND

In May 2011, the Hjelms signed a residential lease agreement, renting apartment 1720A in the Chesapeake Point Apartments, San Mateo (the property).  As Prometheus itself describes it, the Hjelms "entered into a one-year residential lease with Prometheus for the property . . . ."  The Hjelms signed the lease without any negotiation, indeed, while they were still out of state in their former home, the lease having been mailed to them.

1

The lease was a standard Prometheus-drafted lease. The basic agreement was seven pages long and, with various addenda, it totaled 24 pages. As discussed in detail below, the lease (and one addendum) had three provisions allowing Prometheus to recover attorney fees, all of them one-sided, allowing fees only to Prometheus.

In June 2011, the Hjelms moved into apartment 1720A. Fifteen months later, they moved out, their apartment plagued by a bedbug infestation that Prometheus failed to address, not to mention that there was raw sewage on the property.

In September 2012, the Hjelms filed suit against Prometheus. The operative first amended complaint (complaint) alleged seven causes of action, styled as follows: (1) negligence; (2) premises liability; (3) constructive eviction; (4) breach of warranty of habitability; (5) negligent infliction of emotional distress; (6) breach of the covenant of quiet enjoyment; and (7) nuisance. The complaint referred to Prometheus's duty under the lease to provide the Hjelms safe and habitable premises, illustrated, for example, by the cause of action for breach of the covenant of quiet enjoyment, which specifically alleged that "through the lease of the Premises, as well as implicit in Plaintiffs' tenancy," the Hjelms were "entitled to quiet enjoyment of their tenancy as it is defined by Civil Code § 1927." The prayer sought damages and among other things "attorney fees pursuant to contract and statute."

Prometheus filed a general denial that included numerous affirmative defenses, some relevant only to contract claims, illustrated by the fifteenth, which alleged that "plaintiffs substantially and materially breached the contract complained of prior to commencement of this action, which conduct extinguishes the right to maintain the instant action." The thirteenth affirmative defense alleged that the applicable statute of limitations were Code of Civil Procedure sections 337 (contract) and 337.2 (breach of written lease).

Prometheus filed two motions for summary adjudication on the issue of the Hjelms's entitlement to attorney fees. Both motions were denied, the trial court concluding that Civil Code section 1717 (section 1717) applied, to render the attorney fees provisions reciprocal should the Hjelms prevail at trial. Thus, for example, the

second order held in pertinent part as follows: "While Defendant argues at length that the multiple attorney's fees provisions contained in the parties' written lease are applicable only in specific circumstances, Plaintiffs are correct in pointing out that these circumstances cover nearly every situation in which the landlord would be aggrieved. There is no reciprocal remedy for any situation in which the tenant is the injured party. [¶] The Court notes that Paragraph 30 of the lease, which contains an attorney's fee provision, contains this language: 'Resident(s) shall further indemnify, defend and hold harmless Management from and against all claims arising from any breach of default in the performance of any obligation on Resident(s) part to be performed under the terms of the Rental Agreement.' Such a one-sided attorney's fee provision is in violation of Civil Code § 1717(a). *Trope v. Katz* (1995) 11 Cal.4th 274, 285."

The case proceeded to jury trial, with the Honorable Joseph Bergeron presiding. Trial began on March 25, 2014, with testimony taken over eight days. On April 4, the jury returned a verdict for the Hjelms on all counts, awarding economic damage to the Hjelms in the amount of $11,652; non-economic damage to Christine Hjelm of $35,000; and non-economic damage to Justin Hjelm of $25,000. Prometheus did not ask for any clarification of the damages.

Judge Bergeron entered judgment on April 11, and the Hjelms gave notice of entry on April 14.

On April 25, Prometheus filed a notice of intention to move for new trial. Judge Bergeron denied it by order of June 12.

Meanwhile, on April 14, the Hjelms filed a motion for attorney fees. The original moving papers totaled some 76 pages, including a lengthy declaration and a supplemental declaration from the Hjelms's attorney supporting the amount sought. Prometheus filed lengthy opposition, and the Hjelms a reply. The motion came on for hearing on June 12, following which Judge Bergeron permitted Prometheus to file a supplemental brief concerning a new case it had cited at the hearing, addressing an issue of apportionment, a brief that was filed.

Meanwhile, following the June 12 hearing, three minute orders were entered that day. One denied a new trial. Another, that pertinent here, ordered that "Plaintiff's Motion for an Order, Awarding Reasonable Attorney's Fees . . . [is] GRANTED. [¶] Amount of attorneys fees to be determined after further briefing by counsel."

On June 30, Judge Bergeron filed two formal orders, one denying Prometheus's motion to tax costs, the other denying Prometheus's motion for new trial. He also filed a final judgment after verdict which, as pertinent here, recited that he "granted [the Hjelms's] motion for an order awarding reasonable attorney's fees in the amount of $326,475.00 The court finds that the amount of fees requested is reasonable. Therefore, [the Hjelms] are awarded $326,475.00 in attorney's fees."

On August 11, Prometheus filed its notice of appeal.

## DISCUSSION

### Introduction

Prometheus has filed a 64-page appellant's opening brief. It has two arguments. The first, comprising some 70 percent of the argument, is that the attorney fee award "was incorrect and should be reversed." The second is that the "underlying verdict should be reversed." Since the second argument, if successful, would render the attorney fee award—and the first argument—moot, we begin with it. And conclude it cannot succeed—the appeal as to the verdict is untimely, not to mention premised on a factual representation in utter disregard of the rules of appellate procedure.

### No Appeal of the Verdict Can Succeed

As noted above, judgment on the jury verdict was entered on April 11. Notice of entry was served on April 11 and filed on April 14. So, under the general rule, any appeal would have to be filed within sixty days. (Cal. Rules of Court, rule 8.104.) However, on April 25, Prometheus moved for a new trial. And, as noted, Judge Bergeron denied it by minute order of June 12. An order denying new trial was approved by Prometheus's counsel on June 24 and filed on June 30. Thus California Rules of Court, rule 8.108(b)(1)(B) governed the time to appeal: "If any party serves and files a valid notice of intention to move for a new trial, the following extensions of time apply: [¶]

4

(1) If the motion for a new trial is denied, the time to appeal from the judgment is extended for all parties until the earliest of:  [¶]  (A)  30 days after the superior court clerk or a party serves an order denying the motion or a notice of entry of that order (rule 8.108, subd. (b)(1)(A));  [¶]  (B)  30 days after denial of the motion by operation of law (*id.*, subd. (b)(1)(B))."  Thus, the time to appeal expired on July 30.

On June 30, Judge Bergeron also entered a new judgment that restated the denial of the motion for new trial and awarded the Hjelms attorney fees.

Prometheus filed its notice of appeal August 11.  That appeal was timely to attack the attorney fee award.  But not the verdict.  And Judge Bergeron's second judgment does not help Prometheus.

*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214 (*Torres*) is on point.  And dispositive.  There, city retirement board members obtained summary judgment on their claims the city had to pay for their defense in an action against them filed by the city attorney.  The city filed a late notice of appeal, and the Court of Appeal dismissed it.  The trial court later issued an order awarding attorney fees.  The city appealed again, which appeal included an attack on the summary judgment.  The Court of Appeal dismissed the appeal to the extent it concerned the summary judgment.  Discussing the effect of a second judgment, the court began by noting that " 'The effect of an amended judgment on the appeal time period depends on whether the amendment substantially changes the judgment or, instead, simply corrects a clerical error.' "  (*Id.* at p. 222, quoting Eisenberg et al., Cal. Practice Guide:  Civil Appeals & Writs (The Rutter Group 2006) ¶ 3:56, pp. 3-24 to 3-25.)  And the court concluded, "It is well settled, however, that '[w]here the judgment is modified merely to add costs, attorney fees and interest, the original judgment is not substantially changed and the time to appeal it is therefore not affected.' "  (*Ibid.*; accord, *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583.)

*Dakota Payphone, LLC v. Alcarez* (2011) 192 Cal.App.4th 493, 504–505, discusses *Torres* and its holding at length:

5

"In *Torres, supra,* 154 Cal.App.4th 214, the issue was whether the amendment of the judgment to include an amount for attorney fees and costs was a substantial amendment, enabling the court to consider the propriety of granting summary judgment. (*Id.* at p. 221.) Again citing The Rutter Group treatise on civil appeals and writs, the *Torres* court concluded that there is no substantial modification to a judgment when it is merely amended to add costs, attorney fees and interest. (*Torres, supra,* 154 Cal.App.4th at p. 222.) . . . . The cases that have developed this rule with respect to attorney fees and interest appear to find ultimate support for their position in the line of cases that hold that postjudgment awards of attorney fees, costs and interest are separately appealable matters collateral to the actual judgment if they are not included therein. (See *Robinson v. City of Yucaipa* (1994) 28 Cal.App.4th 1506, 1517–1518 [Fourth Dist., Div. Two]; *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 996–998; *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46.) In light of these rulings and the line of cases that they represent, it makes sense to conclude that a separately appealable order after final judgment does not substantially modify the judgment itself for purposes of computing the time in which to file a notice of appeal. Any problem the parties might have with the amendment can be pursued through a separate appeal of the postjudgment order."

In sum, to the extent the appeal sought to attack the verdict, it was too late. But even if it were not, we would refuse to consider it, because Prometheus's brief violates settled rules of appellate procedure.

To put the issue in context, Prometheus's brief statement of facts refers to the Hjelms's "contention that their apartment . . . was uninhabitable," ignoring, of course, all the evidence in the case supporting the *facts* of the bedbug infestation. Prometheus's brief then goes on to discuss the companies it hired to address the problem, and on which it relied, ignoring, along the way, just what Prometheus's own responsibility was—and how it was not met.

And as to the raw sewage issue, this is how Prometheus's brief describes it: "Another issue at trial was the Hjelms' complaint of sewage in the common area behind

6

their apartment.  [Citations.]  Ms. Hjelm testified that she and her husband had reported the sewage issue to Prometheus, but neither she nor her husband provided a written complaint.  [Citation.]  She further testified that Prometheus scheduled a time to fix the sewer line and that its maintenance employees responded to her complaints, although ineffectively in her opinion.  [Citation [asserting that Prometheus's maintenance employees 'would . . . use little tools, but not fix anything'].]  The evidence further showed that Prometheus was seeking a long-term solution for repairing the sewer line [citation], but the issue was not resolved during the Hjelms' tenancy.  [Citation.]"

Then, in its argument asserting  "there was no evidence that Prometheus breached the standard of care applicable to property managers," Prometheus fundamentally argues that the Hjelms provided no expert witness, at least not one with the required qualifications.  As Prometheus sums up at one point, "[t]hus, while Dr. Kaae's testimony may have been relevant to the standard of care applicable to professionals in the *pest control industry*, it was not relevant to the *property management industry*."  Prometheus says the same thing about the sewer line, and then sums up by reference to its expert, who, it claims, provided the "only competent expert testimony on the subject of property management."

Prometheus's argument has several fundamental flaws.

To begin with, Prometheus may be content to call itself a property manager.  The fact is, it signed the lease.

Second, Prometheus cites nothing supporting the proposition that one needs expert testimony to support a claim that bedbug infestation and/or raw sewage on the property may violate the warranty of habitability or the covenant of quiet enjoyment.  Put otherwise, is that not something that might be within the knowledge of an average juror?

Third, and most fundamentally, Prometheus's brief ignores all the evidence—and much there was in the eight-day trial—about prior complaints about bedbugs and about the lack of training Prometheus gave to its employees about how to address the issue.  A few illustrations should suffice.

Prometheus's employee Jennifer Lau testified that the tenants of 1732A made several complaints about bedbugs. Terminex employee Joel Pangilinan testified that the 1732A bedbug infestation was "severe."

The Hjelms's expert on bedbugs, Dr. Richard Kaae, confirmed that Prometheus had not followed its own bedbug policy in this case—indeed, that its bedbug policy was inadequate, even if it had been followed. Because bedbug detection is so difficult, it should not be left to Prometheus's untrained maintenance crew.

The evidence also established that Prometheus failed to adequately train their management personnel, and that there was such significant turnover that new employees often did not even have the ability to consult with their predecessors. Kevin Song, the property manager at the complex in August 2012, testified that he received very little training or support from management. When he began his job, he learned that one of the buildings had a bedbug infestation that had not been addressed for over a year. He had no prior experience dealing with bedbugs, and was unaware of Prometheus's bedbug policy.

Multiple witnesses testified to observing the raw sewage on the property behind the apartment buildings. Lau testified that she called for support to clean up raw sewage upon seeing toilet paper floating up onto the property grounds, and cleaned it up herself on at least one occasion. Song said that Prometheus just fixed the sewage in a "patchwork" way. All this was against the background that Prometheus's own expert, David Saldivar, conceded that raw sewage is a public health and safety emergency.

None of this is mentioned in Prometheus's brief, which recites the facts favorable to it. Such conduct is "not to be condoned," as we said in *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1530–1531, going on to explain why:

"California Rules of Court, rule 8.204(a)(2)(C) provides that an appellant's opening brief shall '[p]rovide a summary of the significant facts . . . .' And the leading California appellate practice guide instructs about this: 'Before addressing the legal issues, your brief should accurately and fairly state the critical facts (including the evidence), free of bias, and likewise as to the applicable law. [¶] Misstatements,

8

misrepresentations and/or material omissions of the relevant facts or law can instantly "undo" an otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility, may draw sanctions [citation], and may well cause you to lose the case!' (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶ 9:27, p. 9-8, italics omitted.) [Prometheus's] brief . . . ignores such instruction.

"[The] brief also ignores the precept that all evidence must be viewed most favorably to [the Hjelms] and in support of the [verdict]. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925–926; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) . . . .

"What [Prometheus] attempts here is merely to reargue the 'facts' as [it] would have them, an argumentative presentation that not only violates the rules noted above, but also disregards the admonition that [it] is not to 'merely reassert [its] position at . . . trial.' (*Conderback, Inc. v. Standard Oil Co.* (1966) 239 Cal.App.2d 664, 687; accord, *Albaugh v. Mt. Shasta Power Corp.* (1937) 9 Cal.2d 751, 773.) In sum, [Prometheus's] brief manifests a treatment of the record that disregards the most fundamental rules of appellate review. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, §§ 365, 368, 421–424, pp. 425–426.) As Justice Mosk well put it, such 'factual presentation is but an attempt to reargue on appeal those factual issues decided adversely to it at the trial level, contrary to established precepts of appellate review. As such, it is doomed to fail.' (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398–399.)"

And fail it does, as we deem the argument waived. (See *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 ["Where a party presents only facts and inferences favorable to his or her position, 'the contention that the findings are not supported by substantial evidence may be deemed waived' "]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

9

**The Attorney Fee Award Was Proper**

*Background and Introduction to the Issue*

As mentioned, two different provisions in the lease provided for attorney fees, paragraph 23 and 30, as follows:

Paragraph 23: "Resident(s) agrees that if they fail to vacate past the ending date of a proper notice to terminate by either party, [*sic*] shall become a holdover tenancy commencing with the first day after the expiration of the notice period, and that Resident(s) shall be responsible for all losses suffered by management and displaced tenants who anticipated taking occupancy at the end of the notice period, including attorney's fees and costs."

Paragraph 30: . . . "This Agreement is made on the express condition that Management is to be free from all liability or loss caused by Resident(s), or Resident(s) guests', agents' or invitees', improper, negligent or intentional acts or omissions . . . . Resident(s) hereby covenants and agrees to indemnify, hold harmless, and defend Management against all claims, losses or liabilities . . . by Resident(s) or Resident(s) agents or invitees, unless such claim, loss or liability is solely as a result of Management's gross negligence or willful misconduct. Such indemnification shall include and apply to attorney's fees, investigator costs, and other costs actually incurred by Management. Resident(s) shall further indemnify, defend and hold harmless Management from and against any and all claims arising from any breach or default in the performance of any obligation on Resident(s) part to be performed under the terms of this Rental Agreement."

The mold addendum also had a fee provision: "Resident agrees to defend, indemnify and hold harmless Management . . . from claims, liabilities, losses, damages and expenses (including attorneys' fees), that they incur that are related to the Resident's breach of the Resident's obligations to Management."

In light of these provisions giving Prometheus the right to recover attorney fees if it were to sue the Hjelms, the Hjelms sought attorney fees under section 1717. Judge Bergeron agreed, and awarded the Hjelms fees.

Prometheus appeals, its fundamental argument being that section 1717 does not apply, an argument with three sub-parts, described by Prometheus as follows:

"(1)  The Hjelms asserted no contract claims, so section 1717 did not apply. . . .

"(2)  The Hjelms elected—and accepted—a distinctive tort remedy (i.e., emotional distress damages), so their action was not 'on a contract' under section 1717. . . .

"(3)  The Lease contained three narrow attorney fee provisions that did not apply to the Hjelms' noncontract claims."

### *Section 1717 and Its Application*

Section 1717 provides in pertinent part:  "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  (§ 1717, subd. (a).)

The primary purpose of section 1717 is "to establish mutuality of remedy when a contractual provision makes recovery of attorneys fees available to only one party, and to prevent the oppressive use of one-sided attorneys fee provisions."  (*Trope v. Katz*, *supra*, 11 Cal.4th at p. 285; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 610.)  The section "reflects legislative intent that equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction." (*International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218, 223–224.)  So, to achieve its goal, section 1717 " 'generally must apply in favor of the party prevailing on a contract claim whenever that party would have been liable under the contract for attorney fees had the other party prevailed.' "  (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1113–1114; accord, *Santisas, supra,* at p. 611.)  In short, section 1717 was enacted to "avoid the perceived unfairness of one-sided attorney fee provisions."  (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1182.)

Finally, and fundamentally, "California courts liberally construe the term ' " 'on a contract' " ' as used within section 1717.  [Citation.]  As long as the action 'involve[s]' a

11

contract it is ' "on [the] contract" ' within the meaning of section 1717. [Citations]."
(*Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 455; *Care Constr., Inc. v. Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701, 706.)

### *The Hjelms Sued on a Contract*

Prometheus's first argument is that section 1717 did not apply because the Hjelms "alleged no contract claims." Prometheus is wrong.

Among other things, the Hjelms sued for breach of the warranty of habitability. Such claim can be "a contract action with contract damages." (See generally 12 Witkin, Summary of Cal. Law. (10th ed. 2005) Real Property, § 627, p. 733; *Fairchild v. Park* (2001) 90 Cal.App.4th 919, 927.)

Prometheus recognizes this principle, but attempts to distinguish it away, its opening brief stating as follows: "Moreover, while a claim for breach of the warranty of habitability or breach of covenant of quiet enjoyment may sound in contract, the facts necessary to support such claims may also be pled in tort. (See *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 918–919 [' . . . assuming appropriate pleadings of fact, a tenant may state a cause of action in tort against his landlord for damages resulting from a breach of the implied warranty of habitability']; see also *Green v. Superior Court* (1974) 10 Cal.3d 616, 619 [recognizing 'a common law implied warranty of habitability in residential leases in California . . .'].) Here, the Hjelms pled facts sounding in tort only and they sought tort damages with respect to all seven of their claims, including Breach of Warranty of Habitability and Breach of Covenant of Quiet Enjoyment. ([Citations] [specifically seeking damages for 'emotional distress'].)"

Prometheus's attempt at distinction is myopic: the Hjelms's claims were not "in tort only." *Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281 persuasively shows why. There, in a demurrer case, the Court of Appeal summed up its discussion—and its holding for plaintiffs—as follows: "Here, the complaint contains causes of action for breach of the warranty of habitability in various forms—(1) 'Violation of California Civil Code Section 1942.4'; (2) 'Tortious Violation for Breach of the Warranty of Habitability'; (3) 'Intentional Infliction of Extreme Emotional Distress';

(4) 'Negligent Infliction of Extreme Emotional Distress'; and (5) 'Negligence: Violation of Duty to Maintain Habitable Conditions.' Based on the foregoing, we cannot say as a matter of law that these causes of action are not viable." (*Erlach v. Sierra Asset Servicing, LLC, supra,* at p. 1299.) So, the warranty of habitability claim can take many forms, as the Hjelms demonstrated here.

In sum, the claim for breach of warranty of habitability was on the contract. So, too, the claim for constructive eviction. It, too, arises from the lease, as conceded by Prometheus's counsel below, conceding that apportionment under Proposition 51 was not proper because constructive eviction is not a tort claim.

*Beeman v. Burling* (1990) 216 Cal.App.3d 1586 is instructive. There, a plaintiff brought a wrongful eviction action under a housing ordinance, and was awarded economic damages, emotional distress damages, and punitive damages. The court held that the plaintiff was entitled to attorney fees under section 1717 because his action was "fundamentally . . . based upon the lease." (*Id.* at p. 1608; see also *Bruckman v. Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051, 1059 [action was on a contract even though it also contained negligence claims].)

In sum, courts have found claims to be "on a contract" in a variety of circumstances extending beyond a direct breach of contract claim. (See, e.g., *In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1601 [action for declaratory and injunctive relief to enforce consent decree]; *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347–348 [equitable action seeking declaratory and injunctive relief and quiet title based on violations of the terms of a promissory note and deed of trust]; *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 490 [unlawful detainer action based on a lessee's breach of covenants in a lease].)

Summing up in a lengthy exposition of the law, the court in *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 241–242 distilled the following principle: "An action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement

by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause."

Prometheus's second sub-argument is that the Hjelms "Elected and Accepted Distinctive Tort Remedies, so Their Action was Not 'On a Contract' Within the Meaning of Section 1717." Prometheus is wrong again.

The argument begins this way: "In addition to alleging tort claims only, the Hjelms elected distinctive tort remedies; they sought, and were awarded, emotional distress damages, further barring section 1717's application here. (*Perry v. Robertson* [1988] 201 Cal.App.3d at 335 ('*Perry*'); *Fairchild v. Park* (2001) 90 Cal.App.4th 919, 924-925 ('*Fairchild*'); *Stoiber v. Honeychuck, supra*, 101 Cal.App.3d at 929-930 ('*Stoiber*').)" This is a less than accurate description of the record.

While the Hjelms were in fact awarded emotional distress damages, this does not mean they "elected distinctive tort remedies." They "elected" nothing. As noted, the Hjelms's complaint alleged contract claims. The jury was instructed on contract claims. The lawyers argued contract claims. And the jury in fact awarded the Hjelms economic damages, not just damages for emotional distress.

Prometheus states that "the trial court instructed the jury as to negligence, but not breach of contract. (6 RT 649:23-652:19.)" Had Prometheus read a few pages later in the instructions, however, it would come upon the special instructions, which included these:

"Every lease contains an implied covenant of quiet enjoyment where the landlord promises . . . to allow the tenant to quiet enjoyment of the premises. If the defendant Prometheus Real Estate Group Inc.'s act or omissions substantially interfered with Christie Hjelm and Justin Hjelm's right to use and enjoy the premises for the purposes contemplated by the tenancy, the defendant, Prometheus Real Estate Group Inc., has breached the covenant of quiet enjoyment.

"If defendant Prometheus Real Estate Group Inc.'s acts or omissions affected Christie Hjelm and Justin Hjelm's use or enjoyment of the property and the Hjelms were

14

compelled to vacate, there is a constructive eviction and Christie Hjelm and Justin Hjelm are not liable for the remaining portion of rent under the lease. [¶] . . . [¶]

"Under the implied warranty of habitability in a residential lease, the defendant, Prometheus Real Estate Group Inc., promised that premises leased to Christie Hjelm and Justin Hjelm . . . would be maintained in a habitable state for the duration of the lease. Defendant, Prometheus Real Estate Group Inc., was required to maintain a building, grounds, and all area of the—all area under its control clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents, and vermin. [¶] . . . [¶]

"If you decide that Christie Hjelm and Justin Hjelm have proven their claim against Prometheus Real Estate Group, you must decide how much money will reasonably compensate Christie Hjelm and Justin Hjelm for the harm. This compensation is called damages. The amount of damages must include an award for each item of harm that was caused by Prometheus Real Estate Group Inc.'s wrongful conduct, even if that particular harm could not have been anticipated.

"Christie Hjelm and Justin Hjelm do not have to prove the exact amount of damages that will provide reasonable compensation for the harm; however, you must not speculate or guess in awarding damages. The damages claimed by Christie Hjelm and Justin Hjelm for the harm caused by Prometheus Real Estate Group fall into two categories called economic damages and noneconomic damages. You will be asked on the verdict form to state the two categories of damages separately.

"The following are the items of economic damages claimed by Christie Hjelm and Justin Hjelm; property damage; moving expenses; and lost earnings. [¶] . . . [¶]

"Christie Hjelm and Justin Hjelm seek damages from Prometheus Real Estate Group Inc. under more than one legal theory; however, each item of damages may be awarded only once regardless of the number of legal theories alleged. You will be asked to decide whether Prometheus Real Estate Group is liable to Christie Hjelm and Justin Hjelm under the following reasonable theories; negligence; premises liability; constructive eviction; breach of the implied warranty of habitability; negligent infliction of emotional distress; breach of the covenant of quiet enjoyment; nuisance.

15

"Economic damages are recovered [*sic*: recoverable] under the following legal theories[:] negligence; premises liability; constructive eviction; breach of the implied warranty of habitability; breach of the covenant of quiet enjoyment.

"Noneconomic damages are recovered [*sic*: recoverable] under the following legal theories[:] negligence; premises liability; constructive eviction; breach of [the] implied warranty of habitability; negligent infliction of emotional distress; breach of the covenant of quiet enjoyment; and nuisance."

The jury verdict included findings for the Hjelms on multiple theories, including their claims for constructive eviction, breach of the warranty of habitability, and breach of the covenant of quiet enjoyment. And the jury answered "[y]es," the Hjelms were damaged under each theory, in answers to questions B3, C3, and E3.

The penultimate page of the verdict reads as follows:

"DAMAGES

"If Christie Hjelm and Justin Hjelm have proved any damages, then please proceed below. [¶] . . . [¶]

"If you answered 'YES' to any of the following questions: Question No. A.4, B.3, C.3, E.3 or G.4, please answer the following section:

"1. What are Christie Hjelm and Justin Hjelm's total economic damages?

"*Economic loss*

"Property damage and loss $6,965

"Moving expenses $2,687

"Lost earnings $600

"Security deposit $1,400

"Total Economic Damages: $11,652

"If you answered 'YES' to any of the following questions: Question No. A.4, B.3, C.3, D.3, D.4, E.3, F.5, please answer the following section:

"2. What are Christie Hjelm's total non-economic damages?

"*Non-economic loss for Christie Hjelm*

"Past noneconomic loss, including

16

"mental suffering and emotional distress $35,000

"Future noneconomic loss, including

"mental suffering and emotional distress $0

"Total Non-Economic Damages for Christie Hjelm:  $35,000"

In sum and in short, the Hjelms sued on theories that included contract.  The jury found for the Hjelms on those theories, and that Prometheus's breach or violation caused damage.  Those theories included constructive eviction.  There is no doubt that is a contract claim, as Prometheus's own counsel acknowledged below, in the post instruction pre-closing argument conference, where Prometheus was arguing, however belatedly, for Proposition 51 apportionment.  And Prometheus's counsel said, "[w]e're only asking for a portion as to the tort causes of action.  Constructive eviction is a contract claim.  We're not asking for an apportionment on that."

The three cases cited by Prometheus are not to the contrary—indeed, they support the Hjelms.

*Perry, supra*, 201 Cal.App.3d 333, the primary case on which Prometheus relies, was an action by Perry against her real estate broker and salespersons, claiming she received inadequate compensation for the sale of her home due to their negligence in drafting the written sales agreement.  The complaint was in "a single count," the court noted, with allegations "adequate to tender both the tort and contract claims for relief." (*Id.* at p. 340–341.)  Perry won and the trial court awarded her attorney fees.  Defendants appealed, and the Court of Appeal affirmed, ending its opinion with this:  "The question is whether plaintiff may pursue a breach of contract theory of remedy when defendants have negligently failed to adequately perform a contractual undertaking.  Such an action is one to enforce the provisions of the contract.  For the reasons given, we hold that when the prevailing plaintiff in such an action has not elected a distinctive *remedy* in tort, such an action may be, and here is, 'on a contract' within the meaning of section 1717." (*Id.* at p. 344.)

Prometheus's reliance on the observation in the case that "Perry did not pursue . . . damages for personal injuries, a characteristic tort remedy" has nothing to do

17

with the case here, where the Hjelms did pursue both contract and tort claims. Prometheus's reliance on *Perry* is hard to understand. Its reliance on *Fairchild* is astonishing.

In *Fairchild*, *supra*, 90 Cal.App.4th 919, a tenant was successful in suing his landlord, but the trial court denied him attorney fees. The Court of Appeal reversed. Doing so, this is how the court described the issue: "The landlord contends that the tenants are not entitled to attorney's fees under the lease because they prevailed on a tort claim, not a contract claim. . . . But we conclude that the tenants are entitled to attorney's fees on a contract theory.

"There is 'a common law implied warranty of habitability in residential leases in California . . . .' (*Green v. Superior Court* (1974) 10 Cal.3d 616, 619 (*Green*).) In the present case, the tenants 'did assert a contractual cause of action: breach of the implied warranty of habitability.' (*Allstate Ins. Co. v. Loo* (1996) 46 Cal.App.4th 1794, 1798.) 'An action by a tenant alleging a breach of the warranty of habitability is an action on the contract that authorizes the recovery of fees pursuant to an attorney fee provision in the rental agreement.' (9 Miller & Starr, Cal. Real Estate (2001 supp.) § 30:17, p. 383.)

"Further, '[w]hether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious. . . . If unclear the action will be considered based on contract rather than tort. . . . [¶] In the final analysis we look to the pleading to determine the nature of plaintiff's claim.' [Citations.]" (*Fairchild, supra*, at pp. 924–925.)

Three paragraphs later the court said this: "And, even assuming that the habitability claim was based on more than one theory—contract, statutory, or tort—the tenants would still be entitled to attorney's fees on the contract theory. As one Court of Appeal has explained in a similar situation: [¶] ' "[T]he same act may be both a breach of contract and a tort. Even where there is a contractual relationship between parties, a cause of action in tort . . . ." ' " *Fairchild* went on to discuss that Court of Appeal opinion at length. That opinion was *Perry*. (*Fairchild, supra*, at pp. 925–927.)

18

*Stoiber*, *supra*, 101 Cal.App.3d 903, had nothing to do with attorney fees. It arose when a trial court sustained demurrers and granted motions for judgment on the pleadings, to the end that all the tenant's causes of action were stricken other than her one cause of action for breach of the warranty of habitability. The Court of Appeal reversed, and issued a writ of mandate to set aside its orders as to the tenant's claims for nuisance, intentional infliction of emotional distress, and constructive eviction. (*Id.* at p. 904). In the words of the court: "[T]he tenant's remedies against the landlord are not limited to breach of the warranty of habitability and he may also plead tort actions." (*Id.* at p. 929.)

In light of all of the above, we question how Prometheus can assert that "under *Perry*, *Fairchild* and *Stoiber*, the plaintiff must choose between inconsistent remedies."

Prometheus's last argument against any fee award is that the lease contained "three narrow attorney fee provisions that did not apply to the Hjelms' noncontract claims." The argument is fatuous.

Paragraph 23 of the lease broadly provides for attorney fees to Prometheus if it gives the tenant notice to terminate the lease for any reason and the tenants do not move out. The clause broadly provides that the tenants "shall be responsible for all losses suffered by management and displaced tenants who anticipated taking occupancy at the end of the notice period, including attorney's fees and costs." Prometheus asserts, in conclusory fashion, that this is not a case of a holdover tenancy and therefore the attorney fee provision does not apply here.

To interpret this provision as Prometheus asserts is contrary to the express language of section 1717, that where a contract provides for attorney fees to enforce the contract, "that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." (Civ. Code, § 1717, subd. (a).) There is no dispute that the Hjelms were not represented by counsel, and had no opportunity to negotiate the terms of the lease.

Perhaps recognizing the weakness of this argument, Prometheus then claims that the attorney fees provision in paragraph 23 cannot apply because a claim involving a

19

holdover tenancy—that is, an unlawful detainer action—is a tort claim that it is beyond the reach of section 1717. Prometheus is wrong again, as shown, for example, by *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc., supra,* 158 Cal.App.4th 479, holding that an unlawful detainer action based upon an "alleged breach of the lease covenant concerning use of the premises during an unexpired term" was a contract action for purposes of section 1717. (*Id.* at p. 488.)

The broad attorney fees provision in paragraph 23 does not restrict fees only to claims arising due to a holdover after expiration of the lease. To the contrary, it applies to virtually any situation under which Prometheus seeks to take action against its tenants. So, for example, under this provision Prometheus could give notice and deem a tenant a holdover for, among other things, nonpayment of rent, subletting, having a pet, causing a disturbance—indeed, any minor violation of the lease. All that Prometheus would want under the lease are possession and money. And it has given itself the right to collect attorney fees in the pursuit of both. Section 1717 applies to give the Hjelms equal rights.

### *Prometheus Has Not Demonstrated That the Fee Award Should Be Reduced*

Prometheus's next argument is that the fee award "should be reduced, as the trial court offered no reasoning for its award." Prometheus also suggests a 0.163 multiplier, based on the proportion of the economic loss to the total damage award. We are not persuaded.

We set forth the applicable law in *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 619–620:

"We have on many occasions set out the law and the standard of review when the issue is the reasonableness of attorney fees awarded, most recently in *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 697–698:

" 'The abuse of discretion standard governs our review of the trial court's determination of a reasonable attorney fee. [Citations.]

" ' "Under the lodestar method, attorney fees are calculated by first multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate of compensation. [Citations.]" '

20

" 'Our Supreme Court has recognized that the lodestar is the basic fee for comparable legal services in the community and that it may be adjusted by the court based on a number of factors in order "to fix a fee at the fair market value for the particular action. . . . '[T]he Legislature appears to have endorsed the [lodestar adjustment] method of calculating fees, except in certain limited situations.' [Citation.] When the Legislature has determined that the lodestar adjustment approach is not appropriate, it has expressly so stated." [Citations.] . . . Here, as appropriate in this type of case, counsel were compensated based on the lodestar calculated by the court, without adjustment.' "

Here, as noted, the Hjelms's motion was supported by detailed declarations from their counsel that included all of the actual time and expense records in the case. The motion was based on a lodestar analysis with no multiplier, and with an hourly rate that was below market rate for an attorney of counsel's experience. (See *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009.) In short, the Hjelms produced substantial—and unrebutted—evidence of the amount of hours spent by their counsel. Judge Bergeron, who had been involved with the case almost from inception, determined that the fees claimed based on that evidence were "reasonable." He was in the best position to determine that, a determination within his discretion. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 [hourly rate]; *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698 [number of hours].) We can reverse only if Prometheus establishes an abuse of that discretion. (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1258.) It has not.

To the extent Prometheus argues that Judge Bergeron did not apportion fee, settled law is contrary: "Once a trial court determines entitlement to an award of attorney fees, apportionment of that award rests within the court's sound discretion." (*Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 505.) And the burden is on Prometheus "to establish that discretion was clearly abused and a miscarriage of justice resulted." (*Carver, supra,* at p. 505.) Prometheus ignores this law—and the record, where the issues were "inextricably intertwined."

21

Many cases address the issue of attorney fees in the context where the claims are "so intertwined as to make it impracticable, if not impossible, to separate the attorneys' time, exemplified by *Maxim Crane Works, L.P. v. Tilbury Constructors* (2012) 208 Cal.App.4th 286 (*Maxim*). *Maxim* arose when a construction worker sued Maxim, a crane company, for personal injuries arising from a worksite incident. Maxim filed a cross-complaint against the injured worker's employer, Tilbury, seeking indemnity. The cross-complaint failed, as the trial court enforced an unfavorable choice-of-law provision in the contract written by Maxim, and found the indemnity agreement inapplicable to the employee's claim. The trial court thereafter awarded Tilbury its full attorney fees, accepting "Tilbury's contention that defense against Maxim's indemnity cross-complaint was 'inextricably intertwined' with Tilbury's defense against Gorski's tort suit." (*Id.* at p. 297.) The Court of Appeal affirmed.

After beginning with the observation its scope of review was "narrow," *Maxim* concluded with this:

"The California Supreme Court has stated that, 'Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.' (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130; see *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111.)

"Further, 'Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units.' (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687; see *Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493 ['Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories.'].)" (*Maxim, supra,* 208 Cal.App.4th at p. 298.)

*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, cited by Prometheus for the proposition that the "trial court abused [its] discretion by failing to apportion fees," is distinguishable. *Heppler* recognized the trial court's discretion, and that a " 'recognized

22

barrier to' " apportionment is " 'inextricably intertwined issues.' " (*Id.* at p. 1297.)  The court nevertheless held some fees had to be apportioned in the setting there, which included that the trial court assessed all fees against Martin, including trial preparation and "trial time (seven weeks) of plaintiffs' counsel."  The Court of Appeal held that "Martin's part of the case could have been tried in considerably less time than seven weeks had the trial not taken up issues that involved the other nonsettling subcontractors. It strikes us as eminently unfair to tag Martin with all of plaintiffs' attorney fees for the entire seven-week trial." (*Ibid.*)  There is nothing unfair about the award here.

Prometheus' brief asserts that we "may also see fit to reduce the overall attorney fee award because the trial court offered no reasoning for its decision."  The assertion is less than candid, as Judge Bergeron found that the "amount of fees requested is reasonable."  This is enough, as a ruling on a fee motion does not require judicial explanation or a statement of decision.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67.)

## The Verdict Form Was Not Error

Prometheus's last argument, set forth in a page, is that "[t]he trial court also erred when it overruled Prometheus's objection to the single verdict form which did not allow the jury to apportion damages as to each cause of action."  The essence of the argument is that the damages portion of the verdict should have been set forth specifically between contract and tort claims, apparently so that the attorney fees could be apportioned. Prometheus demonstrates no error.

As the leading treatise on trial practice puts it, "The use of special verdicts is discretionary with the trial court.  Thus, refusal of a request for a special verdict is rarely ground for reversal on appeal." (Wegner, et al., Cal. Practice Guide:  Civil Trials and Evidence (The Rutter Group 2015) ¶ 17:14, p. 17-6).

Prometheus has shown no abuse.

Beyond that, to the extent that Prometheus's argument focuses on attorney fees, its argument would fail under the cases and authorities discussed above.

23

## DISPOSITION

The judgment is affirmed. The Hjelms shall recover their costs on appeal and, in addition, their appropriate attorney fees for their success on appeal, to be determined by the trial court on remand.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Miller, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHRISTIE HJELM, et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>PROMETHEUS REAL ESTATE GROUP, INC.,<br><br>    Defendant and Appellant. | A142723<br><br>(San Mateo County<br>Super. Ct. No. CIV516959)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

THE COURT:

The opinion in the above-entitled matted filed on September 9, 2016 was not certified for publication in the Official Reports. For good cause, the request for publication by respondents Christie Hjelm, et al. and others is granted.

Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports. Listing of counsel for the Official Reports is attached hereto.

Dated: _____

_____
Kline, P.J.

1

Trial Court:                        Superior Court of San Mateo County

Trial Judge:                        Hon. Joseph E. Bergeron

Attorneys for Appellants:            Ericksen Arbuthnot
                                     Gregory A. Mase
                                     Joseph Jonathan Minioza
                                     Andrew J. Kozlow

Attorneys for Respondents:           Duckworth Peters Lebowitz Olivier
                                     Monique Olivier
                                     Brod Law Firm
                                     Gregory Jay Brod