Filed 12/20/18; Certified for Publication 1/16/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHELLE A. PONT, | B284064 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BD512209) |
| v. | |
| JEFFERY D. PONT, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of
Los Angeles County, Richard J. Burdge, Jr., Judge.  Affirmed.

Law Office of Foroozandeh and Majid Foroozandeh for
Plaintiff and Appellant.

Stephen Temko for Defendant and Respondent.

_____

# INTRODUCTION

Michelle Pont[1] appeals from a $90,000 award in attorney fees and costs in favor of her ex-spouse Jeffery Pont. The parties were initially engaged in a marital proceeding, which they resolved by entering into a stipulated judgment. That judgment included a release, continued family law court enforcement jurisdiction, and attorney fees to the prevailing party who was "forced to seek" court intervention to enforce the stipulated judgment.

Specifically, by the stipulated judgment, Michelle released her claims against Jeffery, and the parties agreed that the Los Angeles family law court would retain jurisdiction to enforce the stipulated judgment's terms. Within the paragraph containing the release, Jeffery made representations about their community property including that none was given to his new wife, Shantal, or the business entity Hand Air, LLC and that neither he nor the community had any interest in Hand Air, LLC. The stipulated judgment also authorized an award of attorney fees and costs to the prevailing party "incurred in connection therewith" a party's effort "to seek Court intervention to enforce any provision of this Stipulated Further Judgment."

Subsequently, Michelle filed a civil lawsuit in Orange County alleging that Jeffery siphoned some of the community assets that were subject to the stipulated judgment. Jeffery successfully demurred and obtained a judgment of dismissal against Michelle's civil lawsuit in Orange County. In

---

[1] We will refer to the parties and other individuals by first name for clarity, not out of familiarity or disrespect. (See *In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 803, fn. 2.)

the family law court, Jeffery then moved under the stipulated judgment's attorney fees provision for recovery of $89,560.50 in attorney fees and $670.61 in costs he incurred in connection with the civil action in Orange County. Ultimately, the family law court awarded Jeffery $90,000 in attorney fees and costs, having rounded down from the amount Jeffery requested.

We conclude that the attorney fees provision in the stipulated judgment encompasses these fees and costs because of its broad language, particularly, the phrase "in connection therewith." We also conclude that the family law court did not abuse its discretion in deeming Jeffery the prevailing party because he obtained a judgment of dismissal against Michelle's civil lawsuit thereby achieving his litigation objectives, which is the applicable standard. Finally, the family law court did not abuse its discretion in awarding $90,000 in attorney fees and costs, and finding that counsel's hourly rates and number of charged hours were reasonable, particularly where Michelle has not provided any competent evidence or analysis challenging those fees and hours.

Finally, we do not resolve the parties' dispute over discovery sanctions to the extent their opening and responding appellate briefs address them because Michelle clarifies in her reply that she "has not appealed [them]."

Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties Resolved Their Marital Dissolution Action By Entering Into A Stipulated Judgment With An Attorney Fees Provision

In September 2009, the parties each filed a marriage dissolution action against the other in the Los Angeles Superior Court family law court, which actions they stipulated to consolidate. On December 14, 2011, Jeffery filed a stipulation and order regarding their final property division, spousal support, and attorney fees and costs, which both parties, their counsel, and the family law court, through Judge Keith M. Clemens, signed.

On March 26, 2012, the family law court, through Judge Clemens, entered a judgment (nunc pro tunc on December 31, 2011) pursuant to a stipulated further judgment of dissolution of marriage. We refer to this document as the stipulated judgment.

The stipulated judgment contains the following attorney fees provision: "18.3. If any Party is forced to seek Court intervention to enforce any provision of this Stipulated Further Judgment, the prevailing Party shall be entitled to all of her or his reasonable attorneys' fees and costs incurred in connection therewith."

It also contains a reservation of jurisdiction clause: "20.12. Reservation of Jurisdiction. Except where this Stipulated Further Judgment expressly provides otherwise, this Court reserves jurisdiction to make such further orders, judgments and decrees as may be necessary or convenient to enforce, but not to alter or modify, the terms and provisions of this Stipulated Further Judgment." (Underscoring omitted.)

4

The stipulated judgment accounted for the parties' assets including their business entities A.P. Express, LLC and A.P. Express Worldwide, LLC. It also accounted for spousal and child support, debts, and a settlement or "equalization" payment owed by Jeffery to Michelle.

Under the stipulated judgment, in paragraph 10.1(15), Michelle released Jeffery and his new wife, Shantal, from all claims regarding another business entity, Hand Air, LLC. As part of the release, Jeffery represented that neither he nor the A.P. entities provided funds to Shantal or Hand Air, LLC for Hand Air Express, LLC's startup or operating costs through the date of execution of the stipulated judgment, and that neither he nor the community had any interest in Hand Air, LLC.

**B.    Michelle Filed An Unsuccessful Civil Lawsuit Alleging That Jeffery Wrongfully Dissipated Some Of The Community Assets That Were Subject To The Stipulated Judgment**

About four years later, on February 9, 2016, Michelle filed a civil lawsuit against Jeffery, Shantal, and Hand Air Express, LLC in the Orange County Superior Court. Michelle asserted causes of action for actual intent to defraud and constructive fraudulent transfer against all three defendants, and breach of A.P. Express, LLC's operating agreement against Jeffery. Michelle alleged, "In an effort to reduce the assets of the AP companies in anticipation of reaching a final divorce based on a Marital Settlement Agreement, defendant Jeff Pont with the assistance of defendant Shantal Pont began transferring AP assets, money and customer accounts to Shantal Pont as the CEO for Hand Air Express, LLC."

5

On June 1, 2016, Jeffery's family law counsel, Meyer, Olson, Lowy & Meyers, LLP (Meyer Olson), through attorney Lisa Meyer,[2] wrote directly to Michelle stating, "In the event you are unwilling to comply with this request [to dismiss the civil lawsuit with prejudice], this letter shall serve as further Notice that Mr. Pont will proceed in filing an Application with the Family Law Department of the Los Angeles Superior Court seeking to enforce the Judgment.  Please be advised that Mr. Pont will also include a request for attorneys' fees and costs pursuant to Paragraph 18.3 of the Judgment . . . ."

Apparently, there was confusion over whether Michelle was then represented by counsel.  Thus, in a subsequent letter, attorney Meyer wrote to Michelle's counsel reiterating the demand:  "Unless you forthwith confirm that Ms. Pont has dismissed her pending Civil Complaint and provide proof of same, we will proceed in seeking enforcement of Paragraph 10.2(15) of the parties' Family Law Judgment, and attendant prevailing party attorneys' fees and costs as authorized by Paragraph 18.3 of the Judgment."

On June 10, 2016, on behalf of Jeffery, attorney Meyer filed an ex parte application in the family court and request for an order for prevailing party attorney fees and costs under paragraph 18.3 of the stipulated judgment.  Additionally, Jeffery requested an order temporarily staying his payment obligations to Michelle pending the civil lawsuit, a finding that Michelle violated the release contained in the stipulated judgment, an

_____

[2] To the extent Michelle objects to attorney Meyer's declaration, she "failed . . . to get a ruling from the trial court on the objection, thus failing to preserve the issue for appeal." (*Bussard v. Minimed, Inc.* (2003) 105 Cal.App.4th 798, 801, fn. 1.)

6

order enforcing the release, an order requiring Michelle to comply with the release and dismiss the civil lawsuit, a finding that the family law court retains jurisdiction over Michelle's claims related to Hand Air Express, LLC, a finding that Jeffery was the prevailing party in "this enforcement proceeding," and an order permitting Jeffery to withhold portions of two future equalization payments to satisfy the attorney fees and costs award.

The family law court, through Judge Kathleen O. Diesman, ruled as follows: "Insufficient showing of exigent circumstances. No authority to dismiss or order dismissal of a civil action. Set on regular calendar for hearing through clerk's office." The hearing was then set on the family law court's regular calendar for July 25, 2016. It was subsequently continued to November 2, 2016, February 8, 2017, and finally to April 19, 2017. We recount those portions of the hearings relevant to this appeal in Subsection C, below.

In the meantime, also in response to Michelle's civil lawsuit, Jeffery, Shantal, and Hand Air Express, LLC engaged Rutan & Tucker, LLP (Rutan), which filed a demurrer on June 9, 2016 on their behalf in the Orange County civil law court. Jeffery, Shantal, and Hand Air Express, LLC argued that the civil law court lacked jurisdiction because the family law court's jurisdiction had already been invoked and, further, Michelle waived the claims she asserted in her civil complaint by agreeing to paragraph 10.1(15) of the stipulated judgment.

On September 14, 2016, the civil law court sustained the demurrer without leave to amend on the ground that it lacked jurisdiction over the family law matters asserted in the civil lawsuit with no possibility of successful amendment, citing *Neal v. Superior Court* (2001) 90 Cal.App.4th 22 (*Neal*),

7

*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1146 (*Rubenstein*), and *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 834 (*Kuehn*). The Orange County court's ruling did not provide an explanation of those cases, but we note that they state that "family law cases should not be allowed to spill over into civil law" (*Neal, supra*, 90 Cal.App.4th at p. 25), and that where a family law judgment is procured by fraud, a tort remedy is unavailable (*Rubenstein, supra*, 81 Cal.App.4th at p. 1146; *Kuehn, supra*, 85 Cal.App.4th at p. 834).

On October 13, 2016, the Orange County civil court entered judgment against Michelle dismissing her complaint and awarding $1,412.70 in costs to Jeffery, Shantal, and Hand Air Express, LLC pursuant to their memorandum of costs for their civil law counsel's work.[3] On January 19, 2017, the Orange County civil law court denied Michelle's motion for leave to file a first amended complaint for the following reasons: "[T]he gravamen of the proposed First Amended Complaint is still the fraudulent conveyance of community property. As ruled in connection with the prior demurrer to the complaint, such matters are for the Family Law Court to decide, and this court has no jurisdiction to hear the matter."[4] The appellate record does not indicate that Michelle appealed that judgment.

---

[3] The memorandum of costs is not in the appellate record. Additionally, the record does not disclose whether Jeffery, Shantal, and/or Hand Air Express, LLC sought, or were awarded attorney fees for the work of either Rutan or Meyer Olson in the Orange County civil court.

[4] We observe that it is unclear why the Orange County civil law court considered Michelle's motion for leave to amend after judgment was entered in light of its earlier ruling

Also in the meantime, in the family law court, the parties engaged in a dispute over Michelle's failure to appear for a deposition multiple times and a related sanctions request. Judge Richard J. Burdge, imposed a $15,000 sanction against Michelle for discovery abuse. Further, Michelle unsuccessfully moved to disqualify Meyer Olson and was sanctioned $8,500 for doing so under Family Code section 271.

Additionally, Michelle filed for Chapter 13 bankruptcy, which case was eventually dismissed for failing to file the required schedules. Michelle also filed an adversary suit in the bankruptcy court against Meyer Olson, which it moved to dismiss. The record does not disclose the outcome of that motion to dismiss, but, in any event, neither party specifically addresses it with respect to the attorney fees issues raised in this appeal.

## C.     The Family Law Court Awarded Jeffery $90,000 In Attorney Fees And Costs Under The Stipulated Judgment, Citing Civil Code Section 1717

On February 8, 2017, the parties returned to the family law court to proceed on Jeffery's request for an award of fees incurred to Meyer Olson only. At that hearing, the family law court, through Judge Burdge, requested additional briefing on Jeffery's entitlement to attorney fees under paragraph 18.3 of the stipulated judgment, a breakdown of fees incurred and covered by the stipulated judgment, and whether Jeffery could be deemed a prevailing party in light of what the family law court described as the civil lawsuit's becoming moot.

---

sustaining the demurrer without leave to amend and judgment of dismissal.

On March 27, 2017 and April 5, 2017, Jeffery and Michelle, respectively, filed the requested additional briefing. In his additional briefing, Jeffery argued that he was entitled to an award of attorney fees and costs under the stipulated judgment's attorney fees provision, which he characterized as "extremely broad." He argued that he was the prevailing party in the civil action, and because the civil action violated the stipulated judgment, he was also the prevailing party in this family law proceeding. He further argued that his family law counsel were forced to file the request for order to seek court intervention to confirm the family law court's continuing jurisdiction and enforce Michelle's release that was memorialized in paragraph 10.1(15) of the stipulated judgment. Jeffery did not expressly cite Civil Code section 1717, which governs an attorney fees award "[i]n any action on a contract." (Civ. Code, § 1717, subd. (a).)

Jeffery next argued, "[i]n addition to the foregoing," Code of Civil Procedure section 1032 authorized the family law court to award attorney fees as costs (*id.*, subd. (b)) and determine the prevailing party where a party recovers something other than monetary relief (*id.,* subd. (a)(4)). He also cited Code of Civil Procedure section 1033.5, subdivision (a)(10) as allowing attorney fees as costs under Code of Civil Procedure section 1032 when authorized by contract, statute, or law. Finally, Jeffery asserted alternatively that he should be awarded attorney fees and costs as a sanction under Family Code section 271.

Although Jeffery sought fees only for Meyer Olson's work, Jeffery's additional briefing included his, attorney Meyer's, and his Rutan attorney's declarations, with their respective timekeeping and billing records appended as exhibits. As for

10

Meyer Olson, it represented that Jeffery incurred $90,231.11 in attorney fees and costs, and that those charges were reasonably necessary to represent him.  An exhibit attached to attorney Meyer's declaration summarized the attorney fees charged by the firm, which totaled $89,560.50.  Attorney Meyer charged $800 per hour for 54.9 hours' work; attorney LaMolinara, $400 per hour for 106.3 hours' work; attorney Herrington, $215 per hour for 0.4 hours' work; attorney Dickerson, $195 per hour for 9.1 hours' work; and a law clerk, $120 per hour for 10.5 hours' work.  Tasks included document review, legal research, interoffice memoranda, communication and conferences, the ex parte application, and court appearances.  The exhibit also summarized costs including filing fees, transcript, court parking, legal research, and photocopying, totaling $670.61.[5]

In opposition, Michelle filed a declaration and memorandum of points and authorities.  She asserted that Jeffery's request should be denied because Meyer Olson did not represent Jeffery in the Orange County civil lawsuit.  She also asserted in a single-paragraph sentence, "there is nothing to be enforced; as such there CANNOT be a prevailing party."  She further asserted that the family law court did not have exclusive jurisdiction because the dissolution action was disposed of by final judgment.  Michelle cited Civil Code section 1717 for the proposition that the trial court may find no prevailing party for fees purposes.  She characterized Jeffery's request as a "head

---

[5] Michelle did not challenge any costs below or in this appeal.  Accordingly, we do not address the costs portion of the award.

scratcher" and speculated that it "is grounded upon greed for money unnecessarily spent."**6**

　　She further contended that Jeffery "was being doubled [*sic*] billed by two separate Law Firms for the same legal services," Meyer Olson was not counsel of record in the civil lawsuit, and the dissolution judgment's attorney fees provision did not apply to fees Jeffery paid to Rutan. Regarding Meyer Olson's hourly rates, Michelle stated, "$800.00 may be a new gold standard hourly rate for family law practitioners in Los Angeles, but whatever is a fair hourly rate, is a side issue here." She, however, proffered no evidence to support that assertion. Finally, she asserted that Jeffery was not forced to seek court intervention to enforce the stipulated judgment because Rutan represented him well in the Orange County court.

　　Michelle filed an additional supplemental brief. Addressing attorney Meyer's declaration, Michelle commented that the family and civil law courts made no finding that Jeffery prevailed on his request for order for attorney fees for the reason that attorney Meyer claimed, which Michelle summarized as, "the Civil Court's ruling was tantamount to the Family Law Court finding that it in fact retained continuing jurisdiction." Michelle asserted that Meyer Olson's work lacked "any reasonable necessity for the prompt, proper and effective representation of Jeffery in the civil action." Michelle also commented on the Rutan attorney's declaration, concluding, without explanation, that, between his family and civil law

---

　　**6** Because Jeffery did not seek fees or costs under Code of Civil Procedure section 128.7, we do not address Michelle's contentions that section 128.7 would not support the award of fees and costs against her.

counsel, Jeffery was billed $150,000 for the demurrer. Michelle stated that "[i]n reality," Rutan billed Jeffery only $8,337.50, and that amount would be a reasonable attorney fees award.

Michelle asserted that Meyer Olson's bills were excessive because multiple attorneys worked on the case. Michelle did not, however, identify any duplicative tasks. She then asserted that Family Code sections 271 (authorizing a sanction for conduct that frustrates settlement of a family law dispute) and 2030 (authorizing fee shifting to ensure that each party has access to legal representation in dissolution proceedings) were inapplicable. Finally, she asserted that neither party prevailed, but she provided no supporting legal analysis.

At the April 19, 2017 hearing, the family law court, through Judge Burdge, announced its tentative ruling to award Jeffery $90,000 in attorney fees under paragraph 18.3 of the stipulated judgment and Civil Code section 1717. The family law court concluded that the civil action was arguably contrary to the stipulated judgment, and therefore it was reasonable for Jeffery to seek to enforce the stipulated judgment and file the ex parte application at the outset of the civil lawsuit "to try to stop the bleeding before it started." It further found Jeffery was successful in thwarting what it characterized as Michelle's "attack on the finality of the [stipulated] judgment."

The family law court commented that Meyer Olson's hourly rates were high but "within the range of rates charged by firms of this capacity in this area." It stated that it had reviewed all the bills and $90,000 did not cover them all. The family law court also noted that although multiple Meyer Olson attorneys were engaged, Jeffery's fees request ameliorated potential excessive

13

billing by, for example, omitting charges for attorneys attending the same conferences.

The family law court further noted that Michelle's opposition papers included "a lot of ad hominem attacks as to whether [the amount of Jeffery's request] was appropriate . . . but there was no specific challenge to either any particular activity or any particular billing charged . . . . It was just complained about, the cost of the whole charge."

Michelle's counsel asked whether the award was being made under Code of Civil Procedure section 128.7; the family law court stated that it was making the order under Civil Code section 1717. Michelle's counsel also asked if the award included fees Rutan charged; the court stated that it did not. Michelle's counsel asked if the award included Meyer Olson's charges for reviewing the demurrer and attending hearings in the civil lawsuit; the court responded in the affirmative, stating that the charges were reasonable. Finally, Michelle's counsel referenced Family Code sections 271 and 2030, and *Askew v. Askew* (1994) 22 Cal.App.4th 942 (*Askew*) (after the family law court acquires jurisdiction to divide community property in a dissolution action, no other trial court department may make an order adversely affecting that division); the court responded that the award was not being made under Family Code section 271 or 2030.

On June 20, 2017, the family law court entered the following order: "Pursuant to Civil Code, §1717, and in accordance with the prevailing party fee provision set forth in the Parties' Judgment, the Court hereby grants a Judgment for attorney's fees and costs against Petitioner [Michelle] in favor of Respondent [Jeffery] in the sum of NINETY THOUSAND DOLLARS ($90,000)." (Underscoring and fn. omitted.)

14

The order also stated the following findings: Jeffery's June 10, 2016 ex parte application was a reasonable attempt to enforce the stipulated judgment, the charges for Jeffery's family law counsel to attend hearings in the civil lawsuit were reasonable, Jeffery was successful and the prevailing party, and Meyer Olson's hourly rates were reasonable. Michelle timely appealed this order. (*P R Burke Corp. v. Victor Valley Wastewater Reclamation Authority* (2002) 98 Cal.App.4th 1047, 1053 (*P R Burke Corp.*) [post judgment order awarding attorney fees is separately appealable].)

## STANDARD OF REVIEW

" '[A] determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) "[T]he reviewing court will examine the applicable . . . provisions of the contract" "to determine whether an award of attorney fees is warranted under a contractual attorney fees provision." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

"We review the trial court's prevailing party determination for an abuse of discretion." (*City of Santa Maria v. Adam* (2016) 248 Cal.App.4th 504, 516.) A "trial court decision on the . . . amount of . . . attorney fees to be awarded" is also reviewed for abuse of discretion. (*Mountain Air, supra,* 3 Cal.5th at p. 751.) " ' "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We

15

presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise." ' " (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378 [in context of statutory attorney fees award under Code of Civil Procedure section 1021.5].)

## DISCUSSION

### A. The Parties' Stipulated Judgment Supports The Attorney Fees Award Because It Contains A Broadly Phrased Attorney Fees Provision, And The Litigation Surrounding Michelle's Civil Lawsuit Falls Within Its Scope

"Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." (Code Civ. Proc., § 1021.) In the case of a contractual attorney fees provision, as here, "any inquiry begins with the language of the attorney fees provision itself." (*Mountain Air*, *supra*, 3 Cal.5th at p. 760.)

" '[I]n construing a contract the court's function is not merely to import all of the possible definitions or even the broadest definition, but to glean the meaning of the words from the context and usage of the words in the contract itself.' " (*Mountain Air*, *supra*, 3 Cal.5th at p. 755, italics omitted.) "Thus, if the facts . . . warrant it, courts 'should consider the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery.' " (*Id.* at pp. 760-761.) The approach should not be "overly formalistic." (*Id.* at p. 760.)

16

With these principles in mind, we also observe that "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed" (Civ. Code, § 1644), and "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other" (*id.*, § 1641).

Here, the parties' attorney fees clause states: "If any Party is forced to seek Court intervention to enforce any provision of this Stipulated Further Judgment, the prevailing Party shall be entitled to all of her or his reasonable attorneys' fees and costs incurred in connection therewith."

The parties dispute whether "Court intervention" is limited to the family law court. Although "Court" is capitalized, it is not expressly defined in the stipulated judgment. In context, "forced to seek Court intervention" is modified by "to enforce any provision of this Stipulated Further Judgment." The party opposing the relief sought in a court other than the Los Angeles family law court would need to bring a defense in that other court. Thus, we conclude that the parties did not intend to limit "Court intervention" to the Los Angeles family law court, especially given the stipulated judgment's continuing jurisdiction provision which Jeffery sought to enforce.[7]

---

[7] Michelle also asserts the term " 'court intervention' refers solely to a Family Law court" because Jeffery has "steadfastly argued [that the family law court] was the only court with jurisdiction to hear any matter arising out of the Stipulated Further Judgment." Michelle fails to support her interpretation

17

We acknowledge that the stipulated judgment refers to "the Court" in stating factual findings. For example, paragraph 15.2(3) states, "The Court finds that no sums of child support are presently due." In that context, "the Court" obviously means the family law court because no other court was making factual findings throughout the parties' dissolution action. The attorney fees provision, however, appears in a different context as described above. Additionally, it is phrased as "Court," not "the Court." The definite article "the" particularizes "Court" to mean the family law court. By omitting the word "the" before "Court" in the attorney fees provision, the parties expressed their intent that the term "Court" refer more broadly to any court.

Even if the term "Court intervention" were limited to the family law court, "in connection therewith" expands that term's scope. "In connection therewith" modifies the fees and costs authorized by the fees provision. The fees and costs are recoverable where incurred to enforce the stipulated judgment. Thus, so long as the fees and costs were incurred to enforce the stipulated judgment, or in connection therewith, they are recoverable regardless of in which court they were incurred.

Concerning "forced to seek," by bringing a lawsuit, Michelle required Jeffery to participate in the Orange County civil court proceedings. Jeffery's only alternative was to decline to participate and default. If the only choice is to default, then

---

with citation to authority or the record and therefore fails to meet her burden on appeal. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655-656 (*Keyes*).) As noted above, we disagree with her argument based on the language in the attorney fees provision, its context within the stipulated agreement, and principles of contract interpretation.

mounting a defense instead constitutes being "forced to seek court intervention."

Turning to the language "enforce any provision of this Stipulated Further Judgment," the stipulated judgment provided that the family law court retained jurisdiction to enforce its terms. Michelle cannot evade that continuing jurisdiction by casting her claims as torts. (See *Neal*, *supra*, 90 Cal.App.4th at p. 25 [granting writ directing trial court to sustain demurrer and stating that "family law cases should not be allowed to spill over into civil law, regardless of whether the family law matter may be characterized as an action for fraud (*Askew*[, *supra*, 22 Cal.App.4th 942]), malicious prosecution (*Bidna*[ v. Rosen (1993) 19 Cal.App.4th 27]), or securities law violation (*D'Elia*[ v. D'Elia (1997) 58 Cal.App.4th 415]). Almost all events in family law litigation can be reframed as civil law actions if a litigant wants to be creative with various causes of action."].)

Michelle brought a civil action in Orange County Superior Court asserting fraud, fraudulent transfer, and breach of A.P. Express, LLC's operating agreement based on an allegation that Jeffery was attempting to reduce Michelle's "share of the former community estate" with "[t]he end result . . . that Michelle . . . received substantially less from the marital settlement agreement." Michelle asserted the two fraud claims against Jeffery, Shantal, and Hand Air Express, LLC. She asserted the breach of contract claim against Jeffery.

To the extent Michelle's claims in the Orange County civil case concerned the circumstances surrounding the stipulated judgment's formation or efforts by Jeffery and other parties to defeat the stipulated judgment's allocation of properties addressed in that judgment, Michelle was required to bring those

19

claims in the family law court in Los Angeles. When she chose the Orange County civil forum instead, she violated the continuing jurisdiction provision in the stipulated judgment. Jeffery's defense of the Orange County civil litigation was thus necessary to enforce that jurisdiction provision.

Michelle asserts that the term "enforce" excludes tort claims, and that Jeffery's demurrer to her civil complaint did not "directly" seek to enforce the stipulated judgment. Michelle's contention lacks merit because even if arguendo the demurrer were an "indirect" enforcement effort, the "in connection therewith" language brings the demurrer proceedings within the fee provision's scope. (See *Mountain Air, supra,* 3 Cal.5th at p. 757 [describing the similar term " 'in connection with' " as broad and observing that it "has been interpreted to extend to both contract and tort claims in a contractual attorney fees provision"].)

In support of her assertion that the attorney fees provision excludes tort claims, Michelle cites *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698. There, the appellate court concluded that tort claims for constructive fraud and breach of fiduciary duty were excluded under the following attorney fees provision, reasoning that those claims were not brought to "enforce" the commercial lease in which the fees provision appeared: "If any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder, the Prevailing Party (as hereafter defined) or Broker in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorney's fees." (*Id.* at pp. 702-703, 709.) This provision is distinguishable from the one here because it lacks the broadening terms "forced to seek Court intervention" and "in

20

connection therewith," which encompass attorney fees and costs incurred in the service of enforcing the stipulated judgment.

In sum, the family law court did not err in interpreting the attorney fees provision to encompass Jeffery's requested fees and costs. We thus turn to whether the family law court abused its discretion in deeming Jeffery the prevailing party.

**B.  The Family Law Court Did Not Abuse Its Discretion In Deeming Jeffery The Prevailing Party Because He Achieved His Litigation Objectives By Obtaining A Judgment Of Dismissal Against Michelle's Civil Lawsuit, Thereby Enforcing The Stipulated Judgment's Jurisdiction Clause**

Jeffery argues that the second sentence of Code of Civil Procedure section 1032, subdivision (a)(4) provides the applicable standard for determining the prevailing party. The family law court applied Civil Code section 1717. We do not have to decide which of these provisions governs the dispute here because both statutes define prevailing party in terms of overall litigation success and recognize that equitable principles inform this determination. We conclude that the family law court did not err in finding that Jeffery had achieved overall litigation success. (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1156 (*Sears*) [although the two statutes "are not identical in their language and therefore differ in application," "where there is evidence of other success [other than the greatest net monetary recovery], . . . the court is entitled to take such recovery into account when calculating which side prevailed. This should be true under Civil Code section 1717 as well as under Code of Civil Procedure section 1032."].)

21

Civil Code section 1717 states that "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract."  (Civ. Code, § 1717, subd. (b)(1).) " '[I]n deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by "a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions." ' " (*Roberts v. Packard, Packard & Johnson* (2013) 217 Cal.App.4th 822, 834, italics omitted.)  " '[I]n determining litigation success, courts should respect substance rather than form, and to this extent should be guided by "equitable considerations."  For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective.' " (*Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 992, italics omitted (*Maynard*).)

Code of Civil Procedure "[s]ection 1032, subdivision (b) provides that '[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding' and [Code of Civil Procedure] section 1033.5, subdivision (a)(10)(A) provides that allowable costs include attorney fees 'when authorized by . . . [¶] . . . Contract.' " (*Maynard*, *supra*, 216 Cal.App.4th at p. 994.)  Code of Civil Procedure section 1032, subdivision (a)(4) defines prevailing party as "the party with a net monetary recovery, a defendant in whose favor a dismissal is

22

entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." The second sentence of this subdivision, which Jeffery relies upon, states, "If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court . . . ." (*Ibid.*) The inquiry under Code of Civil Procedure section 1032 is fact intensive and authorizes the trial court "to consider all factors which may reasonably be considered to indicate success in the litigation." (*Sears*, *supra*, 60 Cal.App.4th at p. 1155.)

Here, Jeffery obtained a judgment of dismissal against Michelle's civil lawsuit and defeated her subsequent attempt to seek leave to amend her defective complaint. Especially given Jeffery's letters to Michelle demanding that she dismiss her civil lawsuit, clearly Jeffery obtained his litigation objective of defeating Michelle's attack on the stipulated judgment. Therefore, Jeffery achieved his litigation objectives and was the prevailing party under either Civil Code section 1717 or Code of Civil Procedure section 1032.

In her appellate briefing, Michelle makes several assertions. We address each in turn.

Michelle asserts that the family law court never determined the prevailing party at the February 8, 2017 or April 19, 2017 hearings. Michelle appeals from a written order, and it is the prevailing party finding made in that order which is controlling regardless of what was stated or unstated at the hearings. (See *P R Burke Corp.*, *supra*, 98 Cal.App.4th at p. 1053.) The order states that Jeffery was the prevailing

23

party. Additionally, at the April 19, 2017 hearing, the family law court stated that Jeffery "was successful in the litigation."

Michelle asserts that the family law court did not determine which party recovered greater relief. This contention relies upon an incomplete view of the relevant standard. As set forth above, the determination of which party obtained greater relief is made "in the sense of most accomplishing its litigation objectives." (*Maynard*, *supra*, 216 Cal.App.4th at p. 992.)

Michelle asserts that Jeffery was not the prevailing party because he did not obtain all the particularized items of relief he requested from the family court in his request for orders (1) staying his support obligation, (2) offsetting his equalization payment obligation, and (3) requiring Michelle to comply with the release and dismiss her civil lawsuit, as well as his request for a finding that the family law court retains jurisdiction. Michelle further asserts that she was the prevailing party because she defeated Jeffery's June 10, 2016 ex parte request for order (which contained the request for attorney fees, was continued, and ultimately heard by Judge Burdge), and the family law court denied his ex parte application on the ground that it lacked authority to dismiss or order Michelle to dismiss her civil lawsuit. Michelle also asserts that with her civil lawsuit dismissed, there was no need for Jeffery to seek to enforce the stipulated judgment, rendering moot the relief Jeffery initially sought in his ex parte application and depriving Jeffery of prevailing party status.

Michelle's arguments are formalistic. It was only because she improperly brought her claims in the Orange County civil court instead of the Los Angeles family law court that both courts struggled with their power to tell the other how to proceed.

24

Viewed for what it was, Michelle's civil lawsuit was an end run against the continuing family court jurisdiction provided in the stipulated judgment.  Jeffery thus sought a ruling from the family law court to recognize that court's continuing jurisdiction, and simultaneously was forced to defend against Michelle's claims in the Orange County civil court by demurring to those claims on that same jurisdictional basis.  (Cf. *Neal*, *supra*, 90 Cal.App.4th at pp. 26-27 ["[B]ecause of the inextricable connection between [respondent]'s supposedly civil causes of action and the family law case (this case is merely family law waged by other means), we direct the *family law court* to make an appropriate attorney fee award [pursuant to Family Code section 271] in [petitioner]'s favor for having been dragged through this unnecessary excursion in the civil court."].)

*Zuehlsdorf v. Simi Valley Unified School Dist.* (2007) 148 Cal.App.4th 249 (*Zuehlsdorf*) is instructive where the relief a party initially sought became moot, but that party could nevertheless be the prevailing party if it achieved overall litigation success.  In *Zuehlsdorf*, the plaintiff sought to enjoin a school district from preventing his daughter from joining a school soccer team.  (*Id.* at p. 252.)  The plaintiff obtained a preliminary injunction.  (*Id.* at pp. 253-254.)  The school district complied with the preliminary injunction, and by the time of trial on the plaintiff's request for a permanent injunction, the soccer season had ended.  (*Id.* at p. 254.)  Thus, the trial court denied the plaintiff's request for a permanent injunction as moot.  (*Ibid.*)  Nevertheless, "this did not deprive [the plaintiff] of prevailing party status entitling him to [attorney] fees [because h]e was successful in his attempt to have [his daughter] reinstated in the

program while [the school district] failed in [its] efforts to prevent her participation." (*Id.* at p. 257.)

Similarly here, the dismissal of Michelle's civil lawsuit obviated Jeffery's pending request for an order from the family law court requiring Michelle to comply with the release and dismiss her civil lawsuit, and for a finding that the family law court retained jurisdiction. The family law court thus did not abuse its discretion in deeming Jeffery the prevailing party because he achieved his overall litigation objective by obtaining a judgment of dismissal against Michelle's civil lawsuit in recognition of the family law court's continuing jurisdiction under the stipulated judgment.

In sum, the family law court did not abuse its discretion in deeming Jeffery the prevailing party.

## C. The Family Law Court Did Not Abuse Its Discretion In Awarding Jeffery $90,000

Attorney fees are determined under the lodestar method, " ' "calculated by first multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate of compensation." ' " (*Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 619.) " ' " 'The "experienced trial judge is the best judge of the value of professional services rendered in [the] court, and while [the trial judge's] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion.' " [Citations.]' Indeed, . . . the 'only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.' [Citation.]" (*Id.* at p. 620.) "The party opposing

26

the fee award can be expected to identify the particular charges it considers objectionable." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101.)

Here, Jeffery's fees and costs request was supported by his attorneys' detailed declarations, which included timesheets and billing records. For each attorney, the records displayed an hourly rate multiplied by the number of hours spent, consistent with a lodestar analysis. As set forth above, Meyer Olson's hourly rates ranged from $120 to $800 for a total of 181.2 hours' work. Costs totaled $670.61. The family law court found that Jeffrey's attorneys' hourly rates "are within the range of rates charged by firms of this capacity in this area." The family law court noted that the rates "are higher than many, but they aren't higher than everyone. There are a number of firms that charge similar rates, and I think the work was justified." Michelle proffered no contrary evidence.

Jeffery's family law counsel, moreover, excluded fees incurred in connection with his request for discovery sanctions and Michelle's motion to disqualify Jeffery's family law counsel. The family law court expressly awarded no fees based on Jeffery's civil law counsel's work. It also "noted that there were a number of times when counsel didn't charge for certain activities, for like, if there were conferences with two people, he charged for one, and no charge for the other." Michelle did not challenge any specific charge.

Thus, the family law court found that Jeffery's family law attorneys' hourly rates were reasonable and within the range charged by similarly situated firms, and their work was justified. To paraphrase *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, the family law court judge "was in the

best position to determine that, a determination within his discretion.  [Citations.]  We can reverse only if [Michelle] establishes an abuse of that discretion.  [Citation.]  [She] has not."  (*Id.* at p. 1177.)

In her appellate papers, Michelle makes several assertions that she did not raise below.  Accordingly, she forfeited those contentions.  (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 [" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.' "].)  Even if we considered Michelle's assertions, they lack merit.

Michelle first asserts that the family law court abused its discretion by failing to apportion "between . . . 'enforcement of judgment' and the 'legal services' extended to the Orange County civil action."  Michelle does not define her quoted terms, and we fail to see the distinction she posits, especially given the stipulated judgment's authorizing fees for work performed "in connection [ ] with" enforcing the judgment as we have explained above.  Jeffery's family law counsel's participation in the civil lawsuit is within the scope of that provision.

Second, Michelle asserts that fees could not have been incurred after September 15, 2016 when the civil action was dismissed.  The record showing that the parties continued to litigate after that date contradicts Michelle's assertion.  For example, the civil law court denied Michelle's motion for leave to amend on January 19, 2017.  Also, the parties appeared at family law court hearings on Jeffery's request for order for fees and costs on February 8, 2017 and April 19, 2017, and filed supplemental briefing on March 27, 2017 and April 5, 2017.  Michelle

28

articulates no reason why awarding fees for these proceedings was an abuse of discretion.

Third, Michelle asserts that the majority of fees billed from October 3, 2016 through February 25, 2017 was related to motions to disqualify Jeffery's family law counsel and stay Dr. William Aiello's deposition.  In support, Michelle merely states that "[a] quick review of the . . . billing statement . . . shows" these facts and cites her family law court opposition brief.  She does not, however, cite any particular timekeeping entries, rendering her showing insufficient.  (See *Keyes, supra*, 189 Cal.App.4th at p. 656 ["It is the appellant's responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf."].)  We nevertheless reviewed the billing statements Michelle mentioned in her appellate opening brief, particularly Jeffery's family law counsel's billing statements from October 3, 2016 through February 24, 2017.[8]  We identified entries related to the motion to disqualify but none related to a motion to stay a deposition or anything concerning a Dr. Aiello.  Michelle also does not explain the significance of Dr. Aiello's deposition or its lack of relationship to enforcing the stipulated judgment.  Additionally, Jeffery's fees request expressly excluded fees incurred because of the motion to disqualify.

---

[8]  Michelle's record citation erroneously includes portions of her supplemental opposition brief filed below and omits the statement of account for charges incurred from February 3, 2017 through February 24, 2017.  We nevertheless reviewed the billing statements for the dates Michelle stated in her opening appellate brief.

Next, Michelle asserts "that the [family law] court mistakenly awarded the majority of the $90,000 to [Jeffery] for the June 10, 2016 exparte [*sic*] application that was flat out denied, and according to [Jeffery's family law counsel]'s billing records, only the sum of $13,600.00 had been incurred at that time." (Underline and bold omitted.) Michelle articulates no basis for her belief that that the family law court "awarded the majority of" the fees for the ex parte application. She also does not cite the record to support her contention that Jeffery's ex parte application was "flat out denied."

Finally, Michelle states, "A $175,000 attorney bill for an 11 [*sic*] page demurrer cannot be reasonable in the mind [of] any reasonable practicing lawyer or competent court of law in the 50 states throughout this nation." Michelle cites no evidence in support of this conclusory statement, and does not address the lodestar calculation, which included tasks in addition to the demurrer.

Overall, Michelle does not satisfy her burden of establishing that the family law court abused its discretion in awarding Jeffery $90,000.

## DISPOSITION

The order is affirmed.  Jeffery is awarded his costs on appeal.


BENDIX, J.


We concur:


ROTHSCHILD, P.J.


CHANEY, J.

Filed 1/16/19

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MICHELLE A. PONT, | B284064 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BD512209) |
| v. | |
| JEFFERY D. PONT, | CERTIFICATION AND ORDER FOR PUBLICATION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

The opinion in the above-entitled matter filed December 20, 2018, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.


BENDIX, J.        ROTHSCHILD, P. J.     CHANEY, J.