Filed 2/6/26  Finley v. Gantz CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ELIZABETH J. FINLEY et al., | D084145 |
| Plaintiffs and Appellants, | |
| v. | |
| ERIK GANTZ, | (Super. Ct. No. 37-2019-00004914-CU-BC-CTL) |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael T. Smyth, Judge.  Affirmed.

Dinsmore & Shohl, John H. Stephens and George A. Rios III for Plaintiffs and Appellants.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, Rebecca L. Reed and Megan E. Dawson for Defendant and Respondent.

Elizabeth J. Finley and Cynthia A. Adams appeal an order awarding Erik Gantz $615,118.37 in prevailing party attorney fees and costs pursuant to Civil Code section 1717 (section 1717).[1]  They contend the trial court erred

---

[1] All references to section 1717 refer to section 1717 of the Civil Code, and all other unspecified statutory references are to the Civil Code.

both in deciding section 1717 warranted an award of fees and costs, and in awarding fees and costs in an amount they assert is excessive. We disagree with both contentions. Hence we affirm.

## I. BACKGROUND

This case is discussed at length in our prior opinion in *Finley, et al. v. Gantz* (May 30, 2025, D082623) [nonpub. opn.] (*Finley*). As set forth in that opinion, Finley and Adams initiated a lawsuit the focus of which was the construction, presence, and use on Gantz's property of a deck and gazebo that affected views from and to Finley and Adams's property.

In the lawsuit, Finley and Adams asserted two claims: one for breach of contract and the other for nuisance. The breach of contract claim was premised on a set of covenants, conditions and restrictions (CC&Rs) that had come into existence when the neighborhood was first developed as well as on a proposed *amended* set of CC&Rs that was put to a neighborhood vote during the period of construction. Referring to these instruments collectively as the CC&Rs, the operative complaint (complaint) alleged the "CC&Rs are valid and enforceable contracts between" the parties. In addition, it specified several restrictions common to both sets of CC&Rs[2] that Gantz's construction and use of the deck and gazebo allegedly had breached. The complaint's nuisance claim likewise was premised on both sets of CC&Rs, and it included an allegation that Gantz's "conduct and breach of the CC&Rs . . . constitute[d] a nuisance pursuant to California Civil Code section 3479

---

[2] Some of the amended CC&Rs Gantz was accused of violating were *identical* to their analogs in the original CC&Rs. The other amended CC&Rs he was accused of violating were *similar* to their analogs in the original CC&Rs.

2

[defining what constitutes a nuisance][3] in that it interfere[d] with [Finley and Adams's] comfortable enjoyment of life and property."

In support of both claims, the complaint invoked a provision in the amended CC&Rs that was not present in the original CC&Rs, stating that: "In the event legal action is commenced to enforce the provisions of [these CC&Rs], the prevailing party shall be entitled to costs of suit and reasonable attorney fees" ( fee and cost shifting provision).  The complaint also included, in its prayer for relief, a corresponding request "for reasonable attorney fees" and "for costs of suit incurred herein."

The matter proceeded to a five-day bench trial, at the conclusion of which the trial court (Sturgeon, J.) issued a statement of decision.  In portions of the statement of decision addressing the breach of contract claim, the court held that Gantz's construction and use of the deck and gazebo (1) did not breach the *original* CC&Rs because those activities did not violate the restrictions from that instrument that Finley and Adams had placed in issue; and (2) did not breach the *amended* CC&Rs (a) because the methodology used to tally votes *consenting* to the amended CC&Rs rendered that instrument invalid and (b) because, even if the votes *had* been tallied appropriately, Gantz's construction of the deck and gazebo was substantially complete before the vote took place.

---

[3]   Section 3479 states:  "Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

After issuing its statement of decision, the court entered judgment against Finley and Adams, and in favor of Gantz, on both claims.

Finley and Adams appealed the judgment and we affirmed. We held the trial court had not erred in concluding that the original CC&Rs had not been breached, that the amended CC&Rs could not have applied because of the timing of the vote[4] (and thus could not have been breached), and that Gantz had not created a nuisance. (*Finley, supra,* D082623.) In addition, we held that: "Our analysis of Finley and Adams's nuisance claim dispenses, not only with that claim, but also with the breach of contract claim to the extent it is premised on . . . [language in] the original CC&Rs that proscribes any activity that " 'may be or may become an annoyance or nuisance to the neighborhood.' "[5] (*Ibid.*)

Meanwhile, during the pendency of *Finley, supra,* D082623, Gantz filed in the trial court an application for an award of attorney fees in the amount of $598,051.50,[6] plus costs in the amount of $63,153.79, pursuant to section

---

[4]     In *Finley, supra,* D082623, we concluded it was unnecessary for us to address the trial court's alternative holding that the amended CC&Rs were invalid. (*Ibid.* ["We need not wade into the parties' dispute regarding the validity of the amended CC&Rs because . . . we conclude that construction of the deck and gazebo was substantially completed prior to the dates that Finley and Adams say the amended CC&Rs took effect]."])

[5]     This restriction appears in identical form in paragraph 3 of both sets of CC&Rs, and states in its entirety that: "No noxious or offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood."

[6]     The initial amount of attorney fees that Gantz sought in his application was $586,188.50; however, when he filed reply papers in support of the application, he increased this sum to $598,051.50 in order to include fees he had incurred in preparing the reply papers.

4

1717.[7]  Finley and Adams opposed the application, contending that section 1717 did not warrant an award of *any* fees or costs and, in all events, that the magnitude of the fees and costs requested was excessive.

The fee motion was heard by a judge (Smyth, J.) other than the judge who had presided over the trial, Judge Sturgeon having retired in the interim.  He considered the argument that section 1717 did not warrant an award of any fees or costs.  But, on the basis of a reasoned analysis, he rejected the argument.

Then, after analyzing detailed time records and other evidence that Gantz had submitted in support of his application, the court concluded that, although the submission was "above reproach," it nonetheless was appropriate to reduce the hourly rate charged by the partners who worked on the case, and therefore it reduced the fee award—by $53,451.00—to $544,600.50.

---

[7]  In the same application, Gantz also requested an award of $374,010.50 in costs (including a portion of his attorney fees) pursuant to Code of Civil Procedure section 998.  So doing, he acknowledged that this amount was duplicative of a portion of the fees and costs he was seeking pursuant to section 1717, that he was not entitled to a double recovery, and that a favorable ruling on the section 1717 component of his application would moot the Code of Civil Procedure section 998 component of the application.  Finley and Adams opposed both components of the application in the trial court, and they continue to oppose both components on appeal.  The trial court concluded Gantz was entitled to certain fees and costs pursuant to Code of Civil Procedure section 998, but does not appear to have increased the amount of the fee award as a result (presumably because doing so would have resulted in some fees and costs being counted twice).  Our affirmation of the trial court's ruling awarding fees and costs sought pursuant to section 1717 renders it unnecessary for us to consider whether some of those fees and costs are also recoverable under Code of Civil Procedure section 998.

Thereafter, the court proceeded to consider principles of apportionment (i.e., whether a portion of the reduced fees applied only to matters beyond the scope of the fee and cost shifting provision), and concluded that apportionment was not warranted under the circumstances of this case. At the conclusion of the fee/cost proceedings, the court amended the judgment to award Gantz $544,600.50 in attorney fees and $63,153.79 in costs.[8]

## II. DISCUSSION

Finley and Adams contend the trial court erred both in deciding section 1717 warranted an award of fees and costs and in awarding fees and costs in an amount they assert is excessive. In addressing these contentions, we begin with the observation that: " ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' [Citation.] In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law

---

[8] The award of costs set forth in the amended judgment is $70,517.87. The $7,364.08 difference between this amount and the $63,153.79 amount awarded pursuant to section 1717 represents recoverable costs determined in parallel proceedings in which the trial court addressed a motion by Finley and Adams to tax costs.

to be reviewed de novo.' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)[9]

## A. Entitlement to Fees and Costs

Turning to the first of Finley and Adams's two contentions, we commence our analysis with the text of section 1717:

> "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs."
> (§ 1717, subd. (a).)

Interpreting this language, our Supreme Court has repeatedly held that the "primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610 (*Santisas*); see also *Trope v. Katz* (1995) 11 Cal.4th 274, 285, 289.)

Sometimes, as here, "a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.' " (*Santisas, supra,* 17 Cal.4th at p. 611.) "To ensure mutuality of remedy in this situation, it has been consistently held that when

---

[9] Some reviewing courts have said the amount of an attorney fee award should be reversed for an abuse of discretion if it is "arbitrary, capricious, or patently absurd." (*Wash v. Banda-Wash* (2025) 108 Cal.App.5th 561, 573.) Others have gone so far as to say the amount of a fee award should be reversed only if it shocks the conscience, suggesting that passion and prejudice influenced the court's determination as to the fees. (*Dragones v. Calkins* (2024) 98 Cal.App.5th 1075, 1085.) We conclude that, in the circumstances presented in this case, no error occurred irrespective of which formulation is applied.

a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed." (*Ibid.*)

In this case, given the existence of the fee and cost shifting provision in the amended CC&Rs, Finley and Adams would have been entitled to recover fees and costs from Gantz under the amended CC&Rs had they prevailed on the portion of their breach of contract claim in which they alleged that Gantz had breached the amended CC&Rs. But they did not prevail on that portion (or any portion) of the breach of contract claim. Instead Gantz did, because he succeeded in persuading the court that the amended CC&Rs were invalid (due to issues pertaining to the vote tally methodology) and/or inapplicable (due to issues pertaining to timing). Thus, by operation of the mutuality principle articulated in *Santisas* and *Trope* (see *ante*), Gantz is entitled to recover fees and costs from Finley and Adams.[10]

---

[10] In an effort to avoid the effect of *Santisas*, Finley and Adams argue the mutuality principle is not triggered under the unique circumstances of this case because the court's finding that the vote on amending the CC&Rs occurred too late to render that instrument applicable to construction of the deck and gazebo means that, even if they had prevailed in establishing that the amended CC&Rs were valid, they would not have been entitled to fees and costs. But the applicable inquiry under *Santisas* is not whether Finley and Adams would have been entitled to fees and costs if they had prevailed in establishing that the amended CC&Rs were *valid*. Rather, it is whether they would have been entitled to fees and costs if they had prevailed in establishing that the amended CC&Rs were *breached*. (*Santisas, supra,* 17 Cal.4th at p. 610.)

8

**B. Amount of Fees and Costs**

To say Gantz is entitled to recover fees and costs he incurred in defending against Finley and Adams's claim that he breached the amended CC&Rs is not to say he is entitled to recover *all* fees and costs he incurred in relation to the claims in this case. Seizing on this distinction, Finley and Adams argue that, for a variety of reasons, the amount should be whittled down.

**1. Apportionment**

One of Finley and Adams's arguments in support of reducing the amount of fees beyond the level to which the trial court reduced them is that, "at best, [Gantz] may only recover attorney fees and costs relating to [claims that Gantz breached] the *amended* [CC&Rs]" (italics added)—i.e., as distinguished from fees and costs relating to claims that he breached the original CC&Rs or caused a nuisance—because it is only the amended CC&Rs that contain a provision entitling the prevailing party to an award of fees and costs and because that provision is narrowly drawn. Thus, for example, with regard to fees and costs Gantz incurred in defending against their claims that he breached the *original* CC&Rs, Finley and Adams cite *Brittalia Ventures v. Stuke Nursery Co., Inc.* (2007) 153 Cal.App.4th 17 for the proposition that the fee-shifting provision in one contract must not be used as a basis on which to award fees incurred with regard to claims alleging the breach of a different contract.

Similarly, as to the fees and costs Gantz incurred defending against their *nuisance* claims, Finley and Adams cite *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, for the proposition that, "[w]here a cause of action based on [a] contract providing for attorney's fees is joined with *other* causes of action *beyond* the contract, the prevailing party may recover attorney's fees under section 1717 *only* as they relate to the contract action" (*id.,* at p. 129,

9

italics added), and the court may apportion out fees for the non-contract claims; and they allege that the fee and cost shifting provision in the amended CC&Rs "is not broad enough to include an award of fees for the tort cause of action for nuisance." These assertions are, in essence, an argument for apportionment of fees and costs among and within causes of action.

But the apportionment argument is not persuasive in the circumstances of this case because the CC&Rs that Finley and Adams placed in issue in the complaint were restrictions that were common to *both* sets of CC&Rs and because one of those common restrictions, by its terms, *literally* forbade creation of a nuisance. (See *ante*.) Thus the tasks that Gantz's attorneys performed to defend against Finley and Adams's claims that he had created a nuisance and the tasks they performed to defend against the claims that he had breached the original CC&Rs were inextricably intertwined with the tasks they performed to defend against the claims that he had breached the *amended* CC&Rs.[11] Consequently, the fees and costs were not subject to apportionment (see *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1177-1178 [referencing the "[m]any cases address[ing] the issue of attorney fees in the context where claims are 'so intertwined as to make it impracticable, if not impossible, to separate the attorneys' time' "

---

[11]    In furtherance of the apportionment argument, Finley and Adams assert that they alleged nuisance *both* "as a breach of contract claim pursuant to [one of the restrictions in the original CC&Rs (see *ante*, fn. 5)]" *and* as "statutory tort claims pursuant to Civil Code section 3479," and that fees and costs incurred in defending against the *statutory* nuisance claims should be excluded from an award of fees and costs pursuant to a *contractual* fee and cost shifting provision. But they then undercut this argument by acknowledging that what they characterize as the claim for "breach of contract for nuisance *is premised on* [their] establishing the tort of nuisance."

10

"into compensable and noncompensable units"]); and the trial court did not err in so concluding.

### 2. Matters Allegedly Not Resolved

Another argument Finley and Adams make in their effort to reduce the award of fees and costs is that the court did not rule on all of the issues they presented. In support of this argument, they assert: that the trial court "did not decide whether the deck and yurt violate the [original CC&Rs'] view protections"; that the court's failure to decide this issue means the issue did not yield Gantz a favorable result; and, therefore, that they should not have to pay whatever portion of fees Gantz incurred in connection with this issue. But in fact this issue *was* decided, and it *did* yield Gantz a favorable result. (See *Finley, supra,* D082623.)

### 3. Fees Prior to Filing

Finley and Adams also argue that any award should exclude attorney fees (totaling $11,535 over the course of nine months) that Gantz incurred between the date that Finley first wrote to him to express concerns about the deck and gazebo and the date the lawsuit was initiated. They base this argument on the fact that the fee and cost shifting provision, by its terms, is triggered only "[i]n the event [that] legal action is commenced to enforce the provisions of [the amended CC&Rs]."[12] But the fact that such a provision is triggered only *if* litigation is commenced does not necessarily mean that fees incurred *before* the litigation is commenced do not come within its scope, and the fact that an attorney performs a task before a lawsuit is initiated does not

_____

[12] Although Finley and Gantz contend it was error for the trial court to award attorney fees that Gantz incurred in connection with tasks performed before the lawsuit was initiated, they do not suggest that such tasks, or the amounts of time or fees corresponding to such tasks, were unreasonable.

perforce render that task any less useful for the ensuing litigation, or any less reasonable, than that task would have been had the attorney waited until after the lawsuit was initiated before performing it. (See, e.g., *Stokus v. Marsh* (1990) 217 Cal.App.3d 647, 655 ["nothing in . . . section [1717] precludes compensation for fees incurred prior to filing the complaint, where fees were reasonably and necessarily incurred at that time by the prevailing party"; " 'if suit is filed, there is no sound reason why the trial court should exclude these prior services in determining a reasonable fee merely because performed before the action is commenced"].[13])

### 4. Fees on Fees

In addition to the arguments discussed above, Finley and Adams also argue that any award should exclude attorney fees or costs that Gantz incurred in litigating whether, and in what amount, fees or costs should be awarded. But they articulate no sound rationale as to why such fees should be considered unreasonable under the circumstances presented in this case.

As noted *ante*, the fee and cost shifting provision states that, if litigation is commenced to enforce the provisions of the amended CC&Rs, "the prevailing party shall be entitled to costs of suit and reasonable attorney fees." Such litigation was commenced. Gantz was the prevailing party. By operation of the fee provision, the fact that he was the prevailing party *entitled* him to reasonable attorney fees. Yet, because Finley and Adams

---

[13] Finley and Gantz endeavor to distinguish *Stokus* by pointing out that it was an unlawful detainer matter and that the pre-filing fees in that case had been incurred during the pendency of two previous cases pertaining to the same tenancy. But neither of these circumstances undercuts the soundness of the principles espoused in *Stokus,* as applied to the circumstances of this case.

vigorously resisted this entitlement, he was put to the *additional* expense of incurring yet more attorney fees to justify his entitlement.

Under the circumstances presented, it was not unreasonable for Gantz to incur the additional attorney fees necessary to overcome Finley and Adams's resistance—or for the court to include such fees in its award. (See generally *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 580 ["it is well established that plaintiffs and their attorneys may recover attorney fees for fee-related matters"]; *Serrano v. Unruh* (1982) 32 Cal.3d 621, 632–633 (*Serrano*) [" 'absent facts rendering the award unjust, parties who qualify for a fee should recover for all hours reasonably spent, including those on fee-related matters' "]; *Bruckman v. Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051, 1062 (*Bruckman*) [stating "it has been held that when an amount of attorney's fees is statutorily authorized, the reasonable expense of preparing the application for fees should be included in the award" and affirming award of prevailing party attorney fees pursuant to the statutory authorization furnished by section 1717]; *Estate of Trynin* (1989) 49 Cal.3d 868, 874–875 (*Trynin*) [citing *Bruckman* and section 1717 in support of statement that, "[w]here the right to counsel fees is based on statute, recovery for fee-related services has been consistently allowed"]; *Ketchum*

13

*v. Moses* (2001) 24 Cal.4th 1122, 1141 (*Ketchum*); *Serrano, supra,* 32 Cal.3d at p. 639.)[14])

### 5. Additional Arguments

Finley and Adams make a variety of additional arguments in which they assert in fleeting and conclusory fashion that the defense was overstaffed, its experts were unqualified, there were too many meetings, the judge who awarded fees and costs was ill suited to do so (having not presided at trial), and the fees were "excessive," "exorbitant," "astonishing," "staggering," and "shocking," especially when juxtaposed against the magnitude of the damages that Finley and Adams had sought or of the amount it would have cost for Gantz to remove the deck and gazebo.[15]  But,

[14]    Finley and Gantz endeavor to distinguish *Ketchum* and *Serrano, supra,* on the basis that the fee awards in these cases were premised on statutory fee-shifting provisions applicable to anti-SLAPP or private attorney general (*Serrano*) proceedings.  (See *Ketchum, supra,*  24 Cal.4th at p. 1141 [fee award pursuant to Code of Civ. Proc., § 425.16]; *Serrano, supra* 32 Cal.3d at p. 639 [fee award pursuant to Code of Civ. Proc., § 1021.5].)  We agree with Finley and Gantz that these provisions have the salutary effect of "encourag[ing] public participation in matters of public significance" and "encourag[ing] attorneys to represent indigent clients."  But we do not agree that the fact that contractual fee-shifting provisions rendered enforceable by application of section 1717 are not rooted in such lofty objectives precludes awards of fees on fees in the section 1717 context.  (See generally *Bruckman, supra,* 190 Cal.App.3d at p. 1062; *Trynin, supra,* 49 Cal.3d at 874–875.)

[15]    Although (for reasons discussed *post*) we need not address the argument that the award was excessive because it dwarfed the magnitude of relief that Finley and Adams sought, we note that, even if this argument were adequately supported, it would not succeed.  (See *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 421 ["[t]here is 'no mathematical rule requiring proportionality between compensatory damages and attorney's fees awards' "].)

inasmuch each of these arguments consists of little more than a sentence or a sentence fragment, and inasmuch as none of these arguments (as presented in Finley and Adams's opening brief) is supported with citations to the record, they need not be addressed. (*Helm v. City of Los Angeles* (2024) 101 Cal.App.5th 1219, 1228 ["It is not our role to scour the record to find evidence to support [a party's] contention . . . . That burden is [the party's] alone."]; *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 ["In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. [Citation.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority."].)

Finley and Adams's final argument is an invitation to this court to evaluate "[w]hether . . . passion and prejudice influenced the [trial court's] determination" of the award of fees and costs, and to substitute its judgment for that of the trial court. We find in the record no basis on which to conclude the award was influenced by passion, by prejudice, or by any other variety of bias, and we decline the invitation to substitute our judgment for that of the trial court.

### III.   DISPOSITION

The order is affirmed.  Gantz is entitled to costs on appeal.


KELETY, J.

WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.